# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JUSTIN A. PENNINGTON,

Petitioner, : Case No. 2:26-cv-356

- vs - Chief Judge Sarah D. Morrison
Magistrate Judge Michael R. Merz

WARDEN,
Noble Correctional Institution,

:

Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case was brought *pro se* by Petitioner Justin Pennington to obtain relief from his conviction in the Athens County Court of Common Pleas and his consequent imprisonment in Respondent's custody (Petition, ECF No. 3). The case is ripe for a report and recommendation from the undersigned on the Petition, the State Court Record (ECF No. 7), the Return of Writ, (ECF No. 8), and Petitioner's Traverse (ECF No. 11).

**Litigation History**

On June 21, 2021, an Athens County grand jury indicted Pennington on one count of murder in violation of Ohio Revised Code § 2903.02(B), one count of involuntary manslaughter in violation of Ohio Revised Code § 2903.04(A), one count of burglary in violation of Ohio

Revised Code § 2911.12(A)(2), one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(2), one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2), one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1), and one count of breaking and entering in violation of Ohio Revised Code § 2911.13(B).

After trial, the jury returned a verdict of guilty on counts 1-2, 4-5 and 7 and not guilty on counts 3 and 6. On May 30, 2023, the trial court entered judgment and merged counts 2 and 4 into count 1 for the purposes of sentencing. Pennington was sentenced to 15 years to life in prison on count 1, 8-12 years on count 5 and 12 months on count 7. Count 5 was ordered to be served consecutively to count 1 and count 7 was ordered to be served concurrently with counts 1 and 5 for a total aggregate prison term of 23 years to life. (State Court Record, ECF No. 7, Ex. 34).

Pennington appealed to the Ohio Fourth District Court of Appeals with new counsel, pleading the following six assignments of error:

1. Appellant's rights to a fair trial under the state and federal constitutions were violated by the improper admission of a 911 call that was unfairly prejudicial in violation of Evid.R. 403(A).

2. Appellants rights to cross-examination under the state and federal constitutions were violated when the trial court limited defense counsel's cross-examination of a victim who was permitted to remain in the courtroom during other testimony pursuant to Marsy's Law.

3. Appellant's Due Process rights under the state and federal constitutions were violated by a conviction for felony murder that was not supported by sufficient evidence on the issue of proximate cause.

> 4. Appellant's conviction for murder was not supported by the weight of the evidence on the issue of proximate cause.
>
> 5. Appellant's conviction for murder was not supported by the weight of the evidence on the issue of self-defense.
>
> 6. Appellant's conviction for felonious assault in count five is not supported by the weight of the evidence.

Appellant's Brief, State Court Record, ECF No. 7, Ex. 40. The Court of Appeals affirmed the conviction and sentence. *State v. Pennington,* 259 N.E.3d 694, 2024-Ohio-5681 (Ohio App. 4th Dist. Nov. 26, 2024). Pennington's further appeal to the Ohio Supreme Court was dismissed for failure to file the required memorandum in support of jurisdiction. *State v. Pennington,* 178 Ohio St.3d 1448 (Apr 24, 2025).

Pennington filed his Petition in this Court on March 24, 2026, pleading the following grounds for relief.

> **Ground One**: Appellant's rights to a fair trial under the state and federal constitutions were violated by the improper admission of a 911 call that was unfairly prejudicial in violation of Evid. R. 403(A).
>
> **Supporting facts:** The trial court violated Petitioner's rights under the United States and Ohio Constitutions when it improperly admitted a 911 call. Petitioner contends that the danger of unfair prejudice outweighed the limited probative value of Cindy Sharpe's 911 call. Appellee, however, argues that the 911 call (1) is a nearly contemporaneous recording of the lifesaving efforts undertaken to reverse the damage Petitioner caused to the victim, (2) shows the level of harm caused, (3) is probative of the cause of death, and (4) shows that Courtney Brown and Cindy Sharpe's efforts to save the victim's life undercut Petitioner's claims that something beyond Petitioner's assault caused the victim's death.
>
> **Ground Two**: Appellant's rights to cross-examination under the state and federal constitutions were violated when the trial court limited defense counsel's cross-examination of a victim who was

permitted to remain in the courtroom during other testimony pursuant to Marsy's Law.

**Supporting facts:** Petitioner asserts that the trial court violated his cross-examination rights when it limited counsel's cross-examination of a victim that the court permitted to remain in the courtroom during other testimony pursuant to Marsy's Law.

**Ground Three**: Appellant's due process rights under the state and federal constitutions were violated by a conviction for felony murder that was not supported by sufficient evidence on the issue of proximate cause.

**Supporting Facts**: Petitioner asserts that appellee failed to present sufficient evidence to prove beyond a reasonable doubt that Petitioner's actions proximately caused the victim's death. In particular, Petitioner argues that Blaine Sharpe's death was not a reasonably foreseeable consequence of the assault because of Blaine's severe heart condition and intoxication.

**Ground Four**: Appellate counsel rendered ineffective assistance when he failed to raise the issue of sufficiency of the evidence pursuant to self-defense.

**Supporting Facts:** Appellate counsel failed to raise the sufficiency of the evidence as an assigned error on direct appeal to preserve the issue for federal review, knowing that a manifest of the weight argument is not cognizable in federal habeas. Counsel should have argued that the sufficiency of the evidence did not support his murder conviction on the issue of self-defense, in particular, that, although the trial court properly instructed the jury that appellee has the burden to disprove self-defense beyond a reasonable doubt, the jury lost its way in rejecting self-defense.

**Ground Five**: Appellate counsel rendered ineffective assistance when he failed to raise the issue of sufficiency of the evidence pursuant to the conviction for felonious assault.

**Supporting Facts**: Appellate counsel failed to raise the sufficiency of the evidence as an assigned error on direct appeal to preserve the issue for federal review, knowing that a manifest of the weight argument is not cognizable in federal habeas. Counsel should have argued that *the sufficiency of the evidence* did not support his felonious assault conviction.

> **Ground Six**: Intoxication prevented him from knowingly, intelligently, and voluntarily waiving his *Miranda* rights.
>
> **Supporting Facts**: Appellate counsel failed to raise a violation of *Miranda* rights, where the record and detectives' own statements acknowledge Petitioner's belligerent state during an interview that was used repeatedly to discredit the Petitioner's testimony. Counsel should have argued that detectives' violation of *Miranda* played a significant role in the outcome of these proceedings.
>
> **Ground Seven**: The trial court abused its discretion when it instructed the jury on deadly force.
>
> **Supporting Facts**: Appellate counsel failed to raise an argument opposing the trial court's instruction on the use of deadly force during jury instructions, where the facts of the case proves that "a few punches" were used, not a weapon which would tend to prove intent as to a felonies assault. Counsel should have challenge [sic] the jury instructions which affected adequate deliberation.

Petition, ECF No. 3.

## Analysis

### Only Federal Constitutional Claims

In Grounds One, Two, and Three, Petitioner asserts his conviction violates both the Ohio and the United States Constitutions. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463

U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

"[l]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.". A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris.* 845 F .2d 610. 614 6th Cir. 1988) (citing *Oviedo v. Jao,* 809 F.2d 326 6th Cir. 1987). Instead "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998).

Accordingly, this Report does not provide analysis of any claimed violations of the Ohio Constitution.

**Ground One: Denial of a Fair Trial: Improper Admission of 911 Call**

In his First Ground for Relief, Pennington asserts his right to a fair trial was violated by admission and playing for the jury of a recording of a 911 call made shortly after the assault by Pennington on Blaine Sharpe. The jury's finding that the assault resulted in Sharpe's death was essential to the murder conviction.

Pennington argued the inadmissibility of the 911 call as his first assignment of error on direct appeal in the following terms:

> APPELLANT'S RIGHTS TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY THE IMPROPER ADMISSION OF A 911 CALL THAT WAS UNFAIRLY PREJUDICIAL IN VIOLATION OF EVID.R. 403(A).

*State v. Pennington, supra,* at ¶ 1. The Fourth District found the following facts regarding the call:

> {¶10} After Cindy found Blaine on the porch, wearing only boxer underwear and with blood and swelling on his face, she called 911. Appellee played the 20-minute 43-second 911 call for the jury. Cindy identified her voice and her daughter's voice on the 911 call. In the call, Cindy is sobbing and distraught, and says, “My daughter just called. Somebody beat the hell out of my husband. He's laying [sic.] on the porch and he's not breathing ... There's blood everywhere ... Oh my God there's blood coming from his head.” The 911 operator assisted Cindy with performing CPR and instructed her to pinch her husband's nose and tilt his head. Cindy replied, “Oh honey, his mouth is full of blood. There's blood coming out of his nose. There's blood coming everywhere.” The operator advised Cindy to return to chest compressions, and the operator asked if she observed the perpetrator at the property. Cindy replied, “It's Justin Pennington. He's walking up the road, my daughter said. Walking towards Fossil Rock Road.” After Cindy's daughter took over the chest compressions, Cindy said, “Come on Blaine. Fight, fight ... I want this guy caught and I want him prosecuted.” Cindy stated, “I was in my room watching TV ... and then my daughter called and said he was laying [sic.] on the porch not breathing and that Justin Pennington just ... beat the sh*t out of him.” Cindy continued, “Blood is coming out of his mouth and ears and nose.”

*Id.* at ¶ 10.

The Fourth District decided the First Assignment of Error as follows:

> {¶49} In his first assignment of error, appellant asserts that the trial court violated his rights under the United States and Ohio Constitutions when it improperly admitted a 911 call. Appellant contends that the danger of unfair prejudice outweighed the limited probative value of Cindy Sharpe's 911 call. Appellee, however,

argues that the 911 call (1) is a nearly contemporaneous recording of the lifesaving efforts undertaken to reverse the damage appellant caused to the victim, (2) shows the level of harm caused, (3) is probative of the cause of death, and (4) shows that Courtney Brown and Cindy Sharpe's efforts to save the victim's life undercut appellant's claims that something beyond appellant's assault caused the victim's death.

{¶50} Generally, " '[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Consequently, "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66; *accord State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, citing *Sage*, 31 Ohio St.3d at 182, 510 N.E.2d 343 (1987). "An abuse of discretion is more than a mere error of law or judgment." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 91; *accord State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 75. Instead, " '[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' " *Morris, supra,* at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Moreover, "[a]buse of discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34; *State v. Russell,* 2022-Ohio-1746, 2022 WL 1665369, ¶ 76 (4th Dist.).

{¶51} As a general rule, all relevant evidence is admissible. Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401 and Evid.R. 402. However, a trial court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403. A trial court has broad discretion to determine whether to exclude evidence under Evid.R. 403(A), and " 'an appellate court

should not interfere absent a clear abuse of that discretion.' " *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, ¶ 40 (2002); *accord Russell, supra,* at ¶ 77.

{¶52} Evid.R. 403(A) "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 2004-Ohio-6005, 2004 WL 2569447, ¶ 50 (4th Dist.). Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2007-Ohio-325, 2007 WL 196552, ¶ 22 (2nd Dist.).

{¶53} In *Russell,* 2022-Ohio-1746, we recognized that, to some degree, all relevant evidence may be prejudicial because it "tends to disprove a party's rendition of the facts" and, thus, "necessarily harms that party's case." *Id.,* citing *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. However, Evid.R. 403(A) does not "attempt to bar all prejudicial evidence." *Crotts* at ¶ 23. Instead, the rules provide that only unfairly prejudicial evidence is excludable. *Id.* " 'Evid.R. 403(A) speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.' " *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990).

{¶54} The Supreme Court of Ohio has held that " '[u]nfair prejudice' does "not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." ' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993). Unfairly prejudicial evidence is evidence that "might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3. It is evidence that arouses the jury's emotions, that " 'evokes a sense of horror,' " or that " 'appeals to an instinct to punish.' " *Id.* " 'Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Id.* Thus, "[u]nfavorable evidence is not equivalent to unfairly prejudicial

evidence." *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist.2001).

{¶55} In the case sub judice, appellant contends that "almost nothing" in the 911 call tended to prove any fact of consequence, and characterizes the call as "extremely emotional and entirely irrelevant." The approximately 20-minute call from Blaine Sharpe's spouse portrayed an emotional wife distraught over her husband's condition, evidence of the extraordinary lifesaving measures Sharpe and Brown took to attempt to save the victim, and identified appellant as the perpetrator.

{¶56} Although appellant challenges the 911 call under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, the Eighth District Court of Appeals recently discussed the nature of a 911 call with respect to the Confrontation Clause and noted:

> Statements a caller makes during a 911 call are often found to be non-testimonial and are admissible if the statements satisfy a hearsay exception. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 61 (8th Dist.). This is because a 911 caller is typically "speaking about events as they [are] actually happening" and "[a]lthough one might call 911 to provide a narrative report of a crime absent any imminent danger," 911 callers are usually facing ongoing emergencies. (Emphasis deleted.) *Davis [v. Washington,* 547 U.S. 813*[* at 827, 126 S.Ct. 2266 [165 L.Ed.2d 224 (2006)] ("A 911 call * * * and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance."). Under such circumstances, the 911 caller is not testifying, the 911 caller is not acting as a witness and the statements of the 911 caller are not testimonial in nature.

*Id.* at 827-828, 126 S.Ct. 2266.

{¶57} Moreover, in *State v. Shine-Johnson*, 2018-Ohio-3347, 117 N.E.3d 986 (10th Dist.), the prosecutor played for the jury a daughter's 911 call, which contained the statement, " '[o]h, my God' multiple times, that she was scared, and that there was too much blood, '[t]his is my dad' and 'this is my daddy,' pleads for medics to hurry, and crying." *Id.* at ¶ 105. The defendant argued that the State played the call only to appeal to the jury's emotions. The Tenth

District concluded that the defendant did not show that the prosecutor improperly sought to incite emotion or sympathy when it played the 911 call. Instead, the court determined that its use "was reasonably calculated to assist the jury in understanding the sequence of events and in evaluating the evidence." *Id.* at ¶ 107.

{¶58} Further, appellee highlights a recent Supreme Court of Ohio case in which an officer's body camera video showed his arrival at the scene, approach to the victim's house, confirmation of the defendant's location, initial communication with the victim, safety check of the backyard, and participation in moving two victim's bodies to the front yard. *State v. Nicholson*, 176 Ohio St.3d 181, 2024-Ohio-604, 247 N.E.3d 178, ¶ 127. The footage also showed the officer trying to speak to one victim and his attempts to perform cardiopulmonary resuscitation (CPR) for about five minutes. The video showed the second victim "twisting and moaning in pain," and jurors could hear an officer in the background state that Nicholson "was beating [a third victim] up and her kids came home," that "he opened fire on them," and that victim had "marks all over her." *Id.* at ¶ 128. Later, the officer stated that Nicholson said he would shoot any officer who responded to the scene. *Id.* The court noted that the video "shows part of M.L.'s torso up close, including the exit wounds in his chest. Combined with the audio, the footage of the CPR efforts is emotionally taxing to watch because Polanco is audibly distraught in the background." *Id.* at ¶ 129.

{¶59} The *Nicholson* court described the body-camera video as relevant and highly probative of the nature and circumstances of the murders. The court noted that the footage "depicted the scene as it was found by the earliest responding officers, including the vital statuses and location of the murder victims." *Id.* at ¶ 131. Thus, the court affirmed the trial court's decision to admit the video footage.

{¶60} In the case sub judice, the distraught wife's sobs could characterize the 911 call as "emotionally taxing." However, unlike *Nicholson,* this case involved no video. Moreover, as appellee notes, appellant cites no authority to support this argument in similar circumstances. At trial, appellee asserted that, because appellant challenged the cause of death, the 911 call is "the best evidence as to what was going on at the Sargent Road address from the time that they discovered him until the time that EMS arrived." The trial court overruled appellant's objection and allowed appellee to play Sharpe's entire 911 call. As the *Nicholson* court recently held, "[t]he state is entitled to offer evidence showing the cause of death, even if the cause of death is uncontested, to give the jury an 'appreciation

> of the nature and circumstances of the crimes.' " *Id.* at ¶ 130, quoting *State v. Evans*, 63 Ohio St.3d 231, 251, 586 N.E.2d 1042 (1992).
>
> {¶61} In addition, appellant asserts that the 911 call is not harmless beyond a reasonable doubt when the other evidence of guilt is "less than overwhelming." As appellee argues, however, appellant cited no authority to indicate that any court reversed a conviction based on an erroneous admissibility decision similar to that now before this court. Moreover, in the case sub judice the evidence of guilt is hardly "less than overwhelming." Here, multiple witnesses identified appellant as the person who assaulted Blaine Sharpe. Appellant, himself, told Sharpe's daughter that he "had just beat the pulp out of [her] Dad." Further, appellant stated in various law enforcement interviews that he "went over to Blaine Sharpe's house and I beat the living f*ck out of that guy," "I went there and I hit him several times. Yes, I punched him in the face three times ... See my wrists. I punched him. Then I went to the house right beside him and I said Courtney, which is his daughter. I said, 'Courtney, your dad f*cked me out of a lot of money and I hurt him on his porch." In addition, in recorded jail calls to his mother, appellant stated, "I lost it, no f*cking way, I don't know, inner demon, I'll have to pay for it the rest of my life." Further, appellant had blood on his stomach upon his arrest.
>
> {¶62} Therefore, after our review, we find no abuse of discretion when the trial court admitted into evidence Cindy Sharpe's 911 call, and we overrule appellant's first assignment of error.

*State v. Pennington supra.*

Before a federal constitutional claim can be considered by a federal district court in habeas corpus, it must first be fairly presented to the state courts to allow them an opportunity to correct constitutional error. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792

(6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009). A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

In his brief on appeal, Pennington relied on cases holding that a constitutional error in admitting evidence must be found to have been harmless beyond a reasonable doubt before its admission will not fatally infect the conviction (Appellant's Brief, State Court Record, ECF No. 7, Ex. 40, PageID 233, citing *Chapman v. California,* 386 U.S. 18, 24 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 86-87 (1963); and *Harrington v. California,* 395 U.S. 250, 254 (1969)). But the Fourth District found no constitutional error in the admission of the 911 call.

The undersigned concludes Pennington fairly presented this claim to the Fourth District as a constitutional claim and the Fourth District decided that claim against him on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).

Pennington cites no Supreme Court precedent to the contrary. Instead he focuses on distinguishing his case from *State v. Nicholson,* 176 Ohio St. 3d 181 (2024), because that case

involved video footage and this is merely an audio recording. However in both cases the recording was offered to show the cause of death. Obviously the recording was not conclusive, but it offered significant evidence to support the conclusion the jury reached, to wit, that Pennington caused Sharpe's death. Pennington's First Ground for Relief is without merit.

Pennington's First Ground for Relief is also procedurally defaulted. To properly exhaust a constitutional claim before coming to federal court, a petitioner must properly complete a full round of state court review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999). In Ohio, "one complete round of the State's established appellate review process" means a defendant must timely and fairly present his on-the-record constitutional claim to the trial court, court of appeals and the Supreme Court of Ohio in direct review." *Caver v. Straub*, 349 F.3d at 346 (6th Cir. 2003) (quoting *Boerckel*, 526 U.S. at 845). Pennington procedurally defaulted this claim by failing to properly file a memorandum in support of jurisdiction in the Ohio Supreme Court.

Petitioner argues that he can demonstrate excusing cause and prejudice to overcome that default (Traverse, ECF No. 11, PageID 1514, citing *McMeans v. Brigano,* 228 F.3d 674, 680 (6th Cir. 2000). Chief Justice Kennedy's Dismissal Entry indicates the memorandum in support of jurisdiction was due April 17, 2025, but had not been filed as of April 24, 2025 (Entry, State Court Record, ECF No. 7, Ex. 48). To show excusing cause and prejudice, Pennington asserts:

> Petitioner had limited access to the law library due to remodeling; (2) Petitioner took the mail to the prison mailroom with sufficient time to arrive timely in the normal course of events; (3) The Institution misinformed Petitioner of the operational date for electronic-filing; it was said to start April 11, 2025, but did not become operational until April 28, 2025, which disrupted Petitioner's timeliness.
>
> The law library is the only refuge for full and fair access to the courts. Without the assistance of, at minimum, a law clerk, the Petitioner is completely unskilled in the science of law, and even

> though the Ohio Supreme Court granted his delayed appeal, he stood a very little chance of meeting the 30-day deadline to file a Memorandum in Support of Jurisdiction due to the circumstances set forth. Thus, the remodeling conducted at Noble Correctional Institution between March 1, 2025 and May 9, 2025, is one of the main causes of Petitioner's inability to meet his deadline.

Traverse, ECF No. 11, PageID 1514-15. None of these asserted facts are corroborated. And when Pennington applied for reconsideration, he only claimed defects in the prison mailing system were the cause. Pennington places some reliance on the prison mailbox rule in the federal court system. Under that rule, a prisoner's filing in federal court is deemed complete when it is deposited in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)). However, the Sixth and Tenth Circuits have held the mailbox rule is not binding on the States. *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003); *Adams v. LeMaster,* 223 F.3d 1177, 1183 (10th Cir. 2000). Ohio has refused to adopt the mailbox rule. *State, ex rel Tyler, v. Alexander*, 52 Ohio St. 3d 84 (1990)(noting that *Houston* is not a constitutional decision and finding its logic unpersuasive). Pennington has accordingly not proven excusing cause and prejudice.

Pennington next asserts he can overcome procedural default by showing actual innocence (Traverse, ECF No. 11, PageID 1514). The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the

> [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit anticipated *McQuiggin* by holding Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

> '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whiteley*, 505

> U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). And in the "gateway" context, our court has said the same thing. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).

Pennington presents no new evidence at all to show his actual innocence. Indeed, he concedes as much: "[a]lthough Petitioner has not provided new reliable evidence, he has provided overlooked evidence that shows no reasonable juror would have found him guilty beyond a reasonable doubt in light of the overlooked evidence." (Traverse, ECF No. 11, PageID 1525). He couples this claim with his assertion of error in the jury instructions. If the jury had heard correct instructions and viewed the evidence as he does, they would not have convicted. But pointing to "overlooked" evidence and claimed jury instructions error is insufficient to satisfy the actual innocence gateway.

Accordingly, Ground One for Relief should be dismissed with prejudice.

**Ground Two: Infringement on Right of Confrontation: Limiting Cross-Examination**

In his Second Ground for Relief, Pennington asserts the limitations placed on his cross-examination of the victim violated his constitutional rights. The Fourth District considered this claim on direct appeal and decided it as follows:

{¶63} In his second assignment of error, appellant asserts that the trial court violated his cross-examination rights when it limited counsel's cross-examination of a victim that the court permitted to remain in the courtroom during other testimony pursuant to Marsy's Law.

{¶64} Evid.R. 615(A) provides that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses ..." However, Evid.R. 605(B)(4) states that "an alleged victim of a charged offense" may not be excluded "to the extent that the alleged victim's presence is authorized" by statute or the Ohio Constitution.

{¶65} Article I, Section 10a of the Ohio Constitution, commonly referred to as Marsy's Law, expanded the rights afforded to victims of crime. Marsy's Law is intended "[t]o secure for victims justice and due process throughout the criminal and juvenile justice systems." It affords crime victims certain rights that are to be "protected in a manner no less vigorous than the rights afforded to the accused ....." Ohio Constitution, Article I, Section 10a (A). These rights include, but are not limited to, the right "to be treated with fairness and respect for the victim's safety, dignity and privacy," as well as the right "to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated ...." *Id.,* Ohio Constitution, Article I, Section 10a (A)(3)*; State v. Norvell,* 2024-Ohio-4443, 2024 WL 4117218, ¶ 28 (12th Dist.), and "reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings." *Id.*, Ohio Constitution, Article I, Section 10a (A)(2) and (3).

{¶66} In pertinent part, Marsy's Law provides victims the right, "upon request, to reasonable and timely notice of all public proceedings involving the criminal offense * * * and to be present at all such proceedings." Ohio Constitution, Article I, Section 10a(A)(2). "While Marsy's Law incorporates the victim's right to be present at trial into the Ohio Constitution, 'the notion that a victim may remain present during the trial proceedings is not new.' " *Grandview Hts. v. B.S.H.*, 2023-Ohio-940, 2023 WL 2607398, ¶ 9 (10th Dist.), quoting *Cleveland v. Alrefaei*, 2020-Ohio-5009, 161 N.E.3d 53, ¶ 57 (8th Dist.); *State v. Davis,* 2023-Ohio-3012, 223 N.E.3d 912, ¶ 7 (3d Dist.). R.C. 2930.09, as effective at the time of the trial, states that "[a] victim ... in a case ... have the right to be present, during any public proceeding, other than a grand jury proceeding."

{¶67} Generally, a decision to allow a victim to remain in the courtroom during a trial is left to the trial court's discretion. The burden is on the defendant to show that the alleged victim's presence compromised the defendant's right to a fair trial. *Alrefaei, supra,* at ¶ 60; *State v. McConnaughey,* 2021-Ohio-3320, 2021 WL 4304847, ¶ 26 (1st Dist.).

{¶68} In the case sub judice, at the start of appellant's trial, appellant requested a separation of witnesses. The trial court, however, denied the motion as to three of the four witnesses because Marsy's Law entitled them to be present. During Nia Robinson's cross-examination, counsel told Robinson to "speak up." After Robinson agreed, counsel asked, "Do you remember me telling Heather [Irwin] that?" Robinson replied, "I do." Counsel then said, "Ok and that's because you've been in the room the entire time and seen all the testimony?" Appellee objected and noted during the bench conference that Robinson "has a Constitutional right to be present. And it's not right that Cross Examination of the fact that she's aloud [sic.] to be in a room." Appellee suggested that the court inform the jury that the victim "has a Constitutional right to be in the room like the Defendant does." In response, counsel stated, "We needed the statement since we opened the door on this line of questioning by allowing that they have been in the Courtroom." The trial court sustained the objection, and counsel continued his thorough cross-examination of Robinson, which continued for 23 pages of the transcript.

{¶69} Appellant claims that this action violated his right to cross-examination under the Sixth Amendment to the United States Constitution through the Fourteenth Amendment and Article I, Section 10 of the Ohio Constitution. Appellant contends that although Marsy's Law grants victims a state constitutional right to be present during all proceedings, "that does not trump a defendant's federal constitutional rights." Appellant contends that, without respect to Marsy's Law, trial courts are required to exclude the victim if the victim's presence would deprive the defendant of a fair trial. Appellant cites R.C. 2930.09, *Alrefaei,* and *McConnaughey*. Appellant contends that a victim's right to be present under Marsy's Law does not insulate them from cross-examination on what they heard and how they may be tailoring their testimony to fit the other evidence.

{¶70} In the case sub judice, we find nothing in the record to show that the trial court failed to consider appellant's right to a fair trial. Moreover, even if we accept for purposes of argument that the trial

court may have erred, we believe that under the circumstances present here that it is harmless because appellant failed to demonstrate prejudice. Courts have held that "for a defendant to show that a victim's presence would result in an unfair trial, [the defendant] must present particularized evidence that the victim's testimony will be so affected by the victim's presence during the testimony of the other witnesses that [the defendant's] right to a fair trial would be violated. General assertions that it is possible are insufficient." *McConnaughey* at ¶ 29, quoting *State v. Maley*, 2013-Ohio-3452, 2013 WL 4041569, ¶7; *accord Alrefaei* at ¶ 63.

{¶71} In *McConnaughey*, the court held that, because the victims' testimony did not dramatically differ from their statements to police, the defendant received a fair trial. Moreover, defense counsel cross-examined both victims to determine the veracity of each victim's testimony. *Id.* at ¶ 30. Thus, the court held that McConnaughey did not demonstrate the necessity to exclude victims and it could not find the trial court's decision to allow the victims to remain in the courtroom to be so arbitrary, unreasonable or unconscionable as to constitute an abuse of discretion. *Id.* Similarly, we conclude that the trial court's decision in the instant case to allow Nia Robinson to remain present in the courtroom during the trial and then testify is not so arbitrary, unreasonable or unconscionable as to constitute an abuse of discretion.[2]

{¶72} In addition, appellant questions victim Heather Irwin's presence throughout the trial and the lack of cross-examination regarding what she may have heard from other witnesses. Appellant argues that this error is not harmless beyond a reasonable doubt because (1) the evidence of guilt relating to Irwin's assault "was not overwhelming" because the sole evidence came from Irwin, who had been drinking that day, (2) officers found the baseball bat the following day and failed to preserve any fingerprints or DNA to tie appellant, Irwin, or Nia to the bat, (3) Irwin's "story was contradicted by other witnesses," and (4) Nia's testimony "was broadly supportive" of Irwin and "echoed Heather's claims" of appellant's violence.

{¶73} First, we note that a detailed cross-examination of Heather Irwin about what she may have heard during her presence at trial seems pointless given that the jury could presume that Irwin heard the same testimony they heard during the trial. Moreover, appellee notes that appellant (1) did not object to Irwin or Robinson's presence during trial, (2) fails to demonstrate how either victim's testimony would have been different had they been excluded from the courtroom during other witness testimony, and (3) fails to

> establish how Marsy's Law limited cross-examination in a prejudicial manner.
>
> {¶74} The Ohio Constitution allows victims to be present during all stages of the proceeding and here we believe that appellant failed to establish that he suffered any prejudice. As for gauging inconsistencies between witnesses, "because a trier of fact sees and hears the witnesses, appellate courts court will also afford substantial deference to a trier of fact's credibility determinations." *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 61 (4th Dist.); *State v. Colonel*, 2023-Ohio-3945, 227 N.E.3d 336, ¶ 50-54 (4th Dist.); *State v. Shepard,* 2024-Ohio-1408, 241 N.E.3d 874, ¶ 37.
>
> {¶75} In the case sub judice, appellant does not point to any particularized evidence in the record to demonstrate that the trial court's action affected the jury or tainted their verdict when it permitted Irwin and Robinson to be present and testify at trial. Thus, we conclude that the trial court's decision to allow the victims to be present and testify is not so arbitrary, unreasonable or unconscionable as to constitute an abuse of discretion.
>
> {¶76} Therefore, based on the foregoing reasons we overrule appellant's second assignment of error.

*State v. Pennington, supra,*

Petitioner's second ground for relief is procedurally defaulted for the same reason as Ground One, to wit, failure to fairly present it to the Ohio Supreme Court. It is also procedurally defaulted for lack of contemporary objection.

On the merits, Pennington has failed to show that the Fourth District's decision is an unreasonable application of any holding of the United States Supreme Court. Essentially Pennington seems to be arguing that the right to separation of witnesses, codified at Ohio R. Evid. 615, overrides the Ohio constitutional right of victims to be present at trial. But Rule 615(b)(4) expressly recognizes an excerption to separation for crime victims whose right to be present is protected by statute or the Ohio Constitution. Without doubt, both Heather Owen and Nia Richardson were victims of the crimes in suit who had a statutory and constitutional right to be

present. Pennington presents no Supreme Court precedent contravening that right. Accordingly Ground Two for Relief should be dismissed.

**Ground Three: Insufficient Evidence to Convict for Felony Murder: Element of Proximate Cause Not Sufficiently Supported**

In his Third Ground for Relief, Pennington asserts the element of proximate cause was insufficiently supported by evidence at trial in that Sharpe's death was not a reasonably foreseeable consequence of Pennington's assault on him, given his "severe heart condition and intoxication."

Petitioner presented this as his third assignment of error on direct appeal and the Fourth District decided it as follows:

> {¶77} In his third assignment of error, appellant asserts that appellee failed to present sufficient evidence to prove beyond a reasonable doubt that appellant's actions proximately caused the victim's death. In particular, appellant argues that Blaine Sharpe's death "was not a reasonably foreseeable consequence" of the assault because of Blaine's "severe heart condition and intoxication." Appellee, however, contends that Sharpe "was not fragile, frail, elderly, or suffering a heart attack," nor did he "die of alcohol poisoning or a drug overdose," and his clogged arteries did not bring about his death.
>
> {¶78} In general, a claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 59 (4th Dist.), citing *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 13 (4th Dist.); *State v. Wickersham*, 2015-Ohio-2756, 2015 WL 4113316, ¶ 22 (4th Dist.); *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, adequacy is the focus; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Thompkins*, syllabus.
>
> {¶79} The standard of review for an appellate court in an evidence sufficiency inquiry is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have

found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991); *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 207. Further, an assignment of error based on sufficiency of ***715** the evidence challenges the state's prima facie case's legal adequacy, not its rational persuasiveness. *State v. Anderson*, 2019-Ohio-395, 2019 WL 495499, ¶ 13 (4th Dist.). Therefore, when an appellate court reviews a sufficiency of the evidence claim, the court must construe the evidence in a light most favorable to the prosecution. *State v. Dunn*, 2017-Ohio-518, 2017 WL 587317, ¶ 13 (4th Dist.); *Wickersham, supra*, ¶ 23; *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996). Consequently, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds cannot reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001).

{¶80} In the case sub judice, in addition to one count of involuntary manslaughter, two counts of felonious assault, and one count of breaking and entering, the jury found appellant guilty of felony murder in violation of R.C. 2903.02(B), which provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not [voluntary or involuntary manslaughter]." Felonious assault, R.C. 2903.11, can serve as a predicate offense for a felony-murder charge. A person commits felonious assault when one "knowingly" causes "serious physical harm to another ..." R.C. 2903.11(A)(1). "[T]aken together, a person commits felony murder with a felonious-assault predicate when he or she knowingly causes serious physical harm to another and that conduct is the proximate cause of another's death." *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 9.

{¶81} Appellant contends that appellee failed to present sufficient evidence to show that appellant's actions proximately caused Sharpe's death. In particular, appellant argues that no evidence established that appellant knew about Sharpe's severe heart condition and intoxication and, from appellant's viewpoint, "Blaine was a perfectly healthy person who should not have died from a punch to the head." Appellant cites *State v. Smith*, 2007-Ohio-1884, 2007 WL 1165822 (4th Dist) in support of his argument. In *Smith*, the victim, a person with diabetes, died after Smith struck him once in the head, and the victim stopped taking his medication. *Id.* at ¶ 1. We held:

> Prior to death, his blood sugar levels were extremely elevated and his bowels had become necrotic. Thus, Smith contends unforeseeable intervening events caused Biser's death. However, based on the testimony from the State's two expert witnesses, a reasonable juror could conclude that Smith's punch and Biser's resulting fall damaged the frontal lobes of Biser's brain. As a normal result of these injuries, Biser became apathetic and disinterested, which in turn, led to his failure to take required medication, and ultimately his death. Biser's lapse in attending to his own care was a response to Smith's assault. Because it was neither unforeseeable nor abnormal, it cannot be an intervening cause that broke the chain of legal causation stemming from the assault.

*Id.*

In our view, *Smith* tends to support appellee's position that Sharpe's death was a foreseeable, normal consequence of appellant's assault. In *State v. Pinkerman,* 2024-Ohio-1150, 2024 WL 1282604 (4th Dist.), we recently addressed causation as it relates to involuntary manslaughter. We wrote:

> In criminal cases, Ohio law generally defines "cause" identically to the definition of "proximate cause" in civil cases. *See, e.g.,* ***716** *State v. Emerson*, 2016-Ohio-8509, 78 N.E.3d 1199, ¶ 24 (2d Dist.). *See also State v. Jacobs*, 8th Dist. Cuyahoga No. 51693, 1987 WL 10047, *2 (Apr. 23, 1987)("It is merely a matter of semantics that criminal cases are 'cause' and 'result' and civil cases use 'proximate cause' and 'proximate result.' They mean the same thing. In fact, R.C. 2903.04 (Involuntary Manslaughter) uses 'proximate result' to state the offenses."); *State v. Tschuor*, 3d Dist. Auglaize No. 2-77-31, 1978 WL 215783, *2 (Oct. 17, 1978)(proximate-cause theory of criminal liability is applicable standard under Ohio's involuntary-manslaughter statute); *State v. Carpenter*, 2019-Ohio-58, 128 N.E.3d 857, ¶ 51 (3d Dist.).
>
> " 'The term "proximate result" in the involuntary manslaughter statute involves two concepts: causation and foreseeability.' " *[State v.] Potee*, 2017-Ohio-2926, 90 N.E.3d 58, at ¶ 33, quoting *State v. Hall*, 12th Dist. No. CA2015-11-022, 2017-Ohio-879 [2017 WL 957747], ¶ 71. In *[State v.] Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899 [2018 WL 1256540], the court considered the argument that sufficient evidence did not support an

> involuntary manslaughter conviction based on a predicate offense of corrupting another with drugs. The appellate court concluded: "Since we have found Brown's arguments against his conviction for corrupting another with drugs are without merit, his conviction for involuntary manslaughter has a properly supported predicate conviction and withstands the sufficiency of the evidence analysis." *Id.* at ¶ 30.

*Pinkerman, supra,* at ¶ 37-38.

{¶82} In *Pinkerman,* we cited the Third District's analysis in *Carpenter:*

> There are several tests for actual causation, the most common of which is the "but for" test; however, there are circumstances under which the "but for" test is inapplicable and an act or omission can be considered a cause in fact if it was a "substantial" or "contributing" factor in producing the result. *See Hall* at ¶ 72-73; *Emerson* at ¶ 24; *Burrage [v. U.S.,* 571 U.S. 204*]* at 215, 134 S.Ct. 881 [187 L.Ed.2d 715 (2014)]; *[State v.] Christman[,* 160 Wash.App. 741] at 755, 249 P.3d 680 [(2011)]. *See also State v. Wilson*, 10th Dist. Franklin No. 03AP-592, 2004-Ohio-2838, 2004 WL 1221748, ¶ 18 ("The injuries inflicted by the defendant need not be the sole cause of death, as long as they constitute a substantial factor in the death."), citing *State v. Johnson*, 60 Ohio App.2d 45, 52, 395 N.E.2d 368 (1st Dist.1977) ("In homicide cases involving the effect of expert medical testimony as to the cause of death, the general principle is that the injury need not be proved to be the direct or sole cause of death, as long as it started a chain of causation which resulted in or substantially contributed to the death."), aff'd, 56 Ohio St.2d 35, 40-41, 381 N.E.2d 637; *Johnson*, *Cause-In-Fact After Burrage v. United States*, 68 Fla.L.Rev. 1727, 1747 (2016) (highlighting Ohio as one of the jurisdictions that does not follow the "but-for" test to establish cause-in-fact causation), citing *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995). "In other words, a defendant can still be held criminally responsible where the defendant's conduct combined with other occurrences to jointly result in a legal injury." *Hall* at ¶ 72. *See also Emerson* at ¶ 24 (noting that "an offender's criminal act does not have to be the sole cause of harm"); *State v. Dunham*, 5th Dist. Richland No. 13CA26, 2014-Ohio-1042, 2014 WL 1340627, ¶ 48 (asserting that "there may be more than one proximate cause of an injury" and,

> to satisfy the causal requirement, cause in fact may be established by proof "that the conduct is a ***717** substantial factor in bringing about the injury").
>
> The second component of causation—the legal or "proximate" cause—refers to the foreseeability of the result. *See* Katz, Martin, & Macke, Baldwin's Ohio Practice, Criminal Law, Section 96:4 (3d Ed.2018). *See also Hall* at ¶ 71; *State v. Bacon*, 6th Dist. Lucas No. L-14-1112, 2016-Ohio-618, 2016 WL 698033, ¶ 83 ("Proximate cause has been defined as ' "a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience." ' "), quoting *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, 2013 WL 4137378, ¶ 23, quoting *State v. Muntaser*, 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, 2003 WL 22455703, ¶¶ 26-27; *[People v.] Nere*, 425 Ill.Dec. [650] at 652, 115 N.E.3d 205, 2018 WL, at *7 (proximate cause "means that the result that actually occurs 'must be enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case of crimes of intention), or the result or manner which his reckless or negligent conduct created a risk of happening (in the case of crimes of recklessness and negligence) that the defendant may fairly be held responsible for the actual result.' "), quoting 1 LaFave at 630-31. A " 'defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of risk created by his conduct.' " *State v. Sabo*, 3d Dist. Union No. 14-09-33, 2010-Ohio-1261, 2010 WL 1173088, ¶ 25, quoting *State v. Losey*, 23 Ohio App.3d 93, 95, 491 N.E.2d 379 (10th Dist.1985). " '[T]hat means that death [or serious physical harm] reasonably could be anticipated by an ordinarily prudent person as likely to result under these or similar circumstances.' " *Id.*, quoting *Losey* at 95, 491 N.E.2d 379.

*Id.* at ¶ 52-53.

{¶83} Morever, in *State v. Johnson*, 2014-Ohio-4443, 2014 WL 4977584 (4th Dist.), we discussed the element of causation in the context of independent intervening events. A jury found Johnson guilty of felonious assault of a corrections officer, Meier. After being transported for treatment, doctors diagnosed Meier with a head injury, headaches, and sprains, and he required shoulder

surgery. At trial, Meier testified he had not been back to work, could not sleep, and suffered debilitating headaches. On appeal, Johnson argued that, although he hit the officer in the face, "the injuries to the shoulder and head were not from the punch but from the melee which ensued when other prison officers got involved."

{¶84} In *Johnson,* we observed that the defendant unquestionably set the sequence of events into motion when he punched the victim in the head. "The jury could have reasonably inferred from those punches themselves that Johnson had caused serious physical harm to Meier resulting in his closed head injury and recurring debilitating headaches." *Johnson* at ¶ 19. Thus, we concluded that (1) Johnson "could have reasonably foreseen that his unprovoked inmate attack on a prison guard would result in the guard he assaulted and other guards following prison protocol by attempting to restrain him by taking him down to the ground," and (2) that the victim's injuries "were consequently reasonably foreseeable to Johnson and they would not have occurred if Johnson had not started the altercation by punching Meier." *Johnson* at ¶ 20.

{¶85} " 'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.' " *Johnson* at ¶ 18, quoting *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978); *State v. Champlin*, 2014-Ohio-1345, 2014 WL 1348807, ¶ 22 (11th Dist.); *State v. Mynes*, 2013-Ohio-4811, 2013 WL 5914899, ¶ 17 (4th Dist.). "[T]he jury, unable to enter the mind of another, is required to consider common sense, causal probabilities in considering whether the defendant acted 'knowingly.' " *State v. Kelly*, 2012-Ohio-523, 2012 WL 439668, ¶ 23 (11th Dist.). *See also State v. Underwood,* 2024-Ohio-2273, 2024 WL 2971828, ¶ 91 (4th Dist.) (although pathologist observed effects of aspiration pneumonia in the victim's lungs, pathologist opined that blunt force injury to victim's head caused his death because "there were no independent intervening causes of death after the traumatic brain injury."); *State v. Jennings,* 2009-Ohio-6840, 2009 WL 5062117, ¶ 51 (10th Dist.)(victim's death reasonably foreseeable consequence of defendant's aggravated robbery offense).

{¶86} In the case sub judice, Forensic Pathologist Dr. Susan Brown testified that the victim's cause of death "was blunt force trauma of the head with arteriosclerotic cardiovascular disease and ethanol intoxication contributing." Dr. Brown explained, "[t]he initiating event of his death is his head trauma. And that coupled with alcohol in his system can cause apnea or it causes you to stop breathing. And

that makes your heart more susceptible if you all ready have coronary heart disease to have cardiac arrest." Brown emphasized, however, that appellant's "death is not due to a drug overdose." Further, Brown clarified that the arteriosclerotic cardiovascular disease contributed to Sharpe's death "only when it's coupled with the head trauma. So again the head trauma is the initiating event. He is alive and well prior to having head trauma. It's only with the head trauma coupled with these other issues, his heart disease and having alcohol in his system that he dies." When asked, "so but for the blunt force trauma to the head those contributing factors would not have led to the death of Blaine Sharpe?," Brown replied, "Not on that day."

{¶87} Appellant contends that some case authority requires a defendant to have prior "actual notice" of the underlying conditions that ultimately contribute to the victim's death, and cites *State v. Nosis*, 22 Ohio App.2d 16, 257 N.E.2d 414 (9th Dist. 1969). However, in *Nosis* the defendant approached the victim's window during a road rage incident and "wanted him to fight." The victim's wife told the defendant to leave her husband alone because he "had a bad heart." After the defendant followed the couple several miles to their home and approached and cursed at the victim a second time, the victim also told the defendant that he had a bad heart. While the victim's wife ran inside to call for help, she looked out and saw her husband lying in the driveway after he suffered a heart attack. *Id.* at 17-18, 257 N.E.2d 414. The victim's doctor testified that the victim suffered from arteriosclerotic heart disease and he advised him to retire. Further, the doctor testified that these events "with reasonable certainty were responsible for" the victim's death." *Id.* at 19-20, 257 N.E.2d 414. The court upheld the manslaughter conviction. *Id.* In our view, *Nosis* focused on proximate cause, not whether the defendant had prior notice of the victim's health, and held that sufficient evidence supported the conclusion that the defendant "assaulted the deceased, in violation of Section 2901.25, Revised Code, and that such assault proximately caused the death of the deceased." *Id.* at 20, 257 N.E.2d 414.

{¶88} In the case sub judice, the statute contemplates a proximate cause theory and the trial court correctly instructed the jury on causation as follows: "Cause is an essential element of the offense of felonious assault. Cause is an act which directly produces the serious physical harm and without which it would not have occurred," and the jury characterized Sharpe's death as a reasonably foreseeable consequence of the events appellant set into motion on June 13, 2021.

> {¶89} After our review of the probative evidence, along with the inferences reasonably drawn therefrom in a light most favorable to the prosecution, we believe that appellee adduced sufficient evidence, if believed, to prove each element of the offense and support appellant's felony murder conviction. Consequently, we overrule appellant's third assignment of error.

*State v. Pennington, supra.*

Respondent asserts Ground Three is procedurally defaulted on the same basis as Ground One and the Magistrate Judge agrees.

In addition, the Fourth District decided this claim on the merits, applying the same standard adopted by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pennington's burden on the merits is to show that that was an unreasonable application of *Jackson*.

Pennington asserts instead that "Sadly, Blaine Sharpe, in his unhealthy - drug and alcohol induced - state, caused his own death when he decided to attack the Petitioner, who was in the process of leaving the residence." (Traverse, ECF No. 11, PageID 1522). Pennington's theory is that he only struck the deceased in self-defense and the death therefore could not be murder. As to the self-defense claim, the Fourth District held:

> {¶97} However, as appellee observes, appellant is the only witness who supported the self-defense claim. Further, appellee asserts that a "reviewing court is not required to accept as true the incredible; whether the evidence is uncontradicted; whether a witness was impeached; what was not proved; the certainty of the evidence; the reliability of the evidence; whether a witness' testimony is self-serving; whether the evidence is vague, uncertain, conflicting or fragmentary." *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (1985).
>
> {¶98} In the case at bar, the jury chose to disbelieve appellant's testimony that he did not intend to harm the 59-year-old victim and that he acted only in self-defense. However, as appellee points out, appellant's statements on recorded jail calls contradict appellant's own testimony and his theory of self-defense. Appellant stated on one call to his mother, "I was just going there to punch him in the ...

> mouth." He also described his actions to law enforcement as "hammer fist" blows to the victim's head.
>
> {¶99} Thus, after we consider all the evidence adduced at trial, we believe that a rational jury could have rejected appellant's self-defense theory. As noted above, appellee presented ample, competent credible evidence that appellant caused the victim's death as a proximate result of his assault.

*State v. Pennington, supra.*

Therefore Ground Three should be denied as procedurally defaulted and on the merits.

**Grounds Four, Five, and Six: Ineffective Assistance of Appellate Counsel**

In his Fourth, Fifth, and Sixth Grounds for Relief, Pennington claims he was deprived of his Sixth Amendment right to the effective assistance of counsel on his appeal to the Fourth District. The Sixth Amendment protects a criminal defendant's right to the effective assistance of counsel on a first appeal of right. The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Ohio law provides one and only one remedy for ineffective assistance of appellate counsel: an application for reopening the appeal under Ohio R. App. P. 26(B). *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,*

693 F.3d 555, 564 (6th Cir. 2012).

Pennington never filed an application for reopening to raise these claims of ineffective assistance of appellate counsel and they are thus procedurally defaulted.

**Ground Seven: Abuse of Discretion in Jury Instruction on Deadly Force**

In his Seventh Ground for Relief, Pennington asserts the trial judge abused his discretion in instructing the jury on the use of deadly force. In the Supporting Facts for this claim, he asserts he was provided ineffective assistance of appellate counsel when his appellate attorney did not raise this claim. If this claim is construed as an ineffective assistance of appellate counsel claim, it is procedurally defaulted by Pennington's failure to raise it in an application for reopening the appeal. If instead it is construed as a claim of trial court error, it is procedurally defaulted by Pennington's failure to raise it on direct appeal. Review of the Fourth District's opinion shows no reference to the jury instructions given or not given.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.

October 29, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #